OTTO O. LEE, CA Bar No. 173987
olee@iplg.com
KEVIN VIAU, CA Bar No. 275556
kviau@iplg.com
INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113
Telephone: (408) 286-8933
Facsimile: (408) 286-8932

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DECADENT MINAMALIST, INC., a Delaware corporation. | Case No.: 17-CV-05467 |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| v. | **DEMAND FOR JURY TRIAL** |
| CURV GROUP, LLC, an Illinois limited liability company. | |
| Defendant. | |

Decadent Minimalist Inc., for its Complaint against Curv Group, LLC, hereby alleges as follows:

## PARTIES

1.      Plaintiff Decadent Minimalist Inc., ("DM") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 901 North Algona Boulevard, Suite D, Algona, Washington 98001.

2.      On information and belief, Defendant Curv Group, LLC ("Curv") is a limited liability company organized and existing under the laws of State of Illinois, with its principal place of business at 860 Bonnie Lane, Elk Grove Village, Illinois 60007.

## JURISDICTION AND VENUE

3.      Plaintiff brings this action for patent infringement under the Patent Act, 35 U.S.C. § 1, *et seq.*, including 35 U.S.C. § 271, trade dress infringement under the Trademark Act, 15 U.S.C. §

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

1051, *et seq.*, including 15 U.S.C. § 1125, and unfair competition, including under Cal. Bus. & Prof. Code § 17200. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1338(b).

4.      The Court has personal jurisdiction over Defendant because Defendant has maintained certain minimum contacts with the State of California such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. As alleged herein, Defendant has transacted significant business and committed and/or induced acts of patent infringement giving rise to this suit in this State and District.

5.      Venue is proper in this District under 28 U.S.C. § 1391(a) because Curv is a limited liability company subject to personal jurisdiction in this District and is therefore deemed to reside in this District under 28 U.S.C. § 1391(c). Venue is proper in this District under 28 U.S.C. § 1391(b) because, upon information and belief, Curv has transacted significant business in this District, and has committed and/or induced acts of patent infringement giving rise to this suit in this District, including by the sale of infringing products here.

## INTRADISTRICT ASSIGNMENT

6.      This is an Intellectual Property Action subject to district-wide assignment in San Francisco, Oakland, or San Jose pursuant to Civil Local Rule 3-2(c).

## UNITED STATES PATENT NO. 9,681,721

7.      Plaintiff is the owner of United States Patent No. 9,681,721 (the "'721 Patent") entitled "Card Wallet," which is valid and subsisting. The '721 Patent issued on June 20, 2017. A true and correct copy of the '721 Patent is attached hereto as Exhibit A.

8.      Erik Moon is the inventor of the '721 Patent.

9.      Erik Moon assigned all rights in the '721 Patent to Plaintiff.

10.      Plaintiff has complied with the statutory requirement of placing a notice of the Letters Patent on the devices it manufactures and sells as required by 35 U.S.C. § 287.

## FACTUAL BACKGROUND

## DM and Its Intellectual Property

11.      In or about 2014, Erik Moon conceived of a unique and innovative wallet device to be

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

used for holding credit cards, identification cards, RFID cards, and other cards. Plaintiff's unique and sleek card wallet device is lightweight and allows visibility of and easy access to cards.

12.    The card wallet invented by Erik Moon appears generally as an open-ended rectangular device comprised of a base and lower and upper arms extending from the base. The upper and lower arms comprise a channel through which to slide cards; the cards are then retained at the base of the device. Plaintiff's device further features protrusions at the outer tips of the upper and lower arms to form an enclosed retention area to prevent cards from falling out. When inserting a card, the protrusions move to an open position as the upper and lower arms are flexed outward so that a continuous, unblocked channel is formed to receive the card. As the upper and lower arms flex back inward to a resting position once the card is inserted, the protrusions accordingly move back to a closed position allowing the card to be fully retained within the wallet without falling out the open end. Plaintiff's invention is depicted as follows, as shown in Figs. 2-3 of the '721 Patent:



13.    On or about August 12, 2014, Erik Moon filed the utility patent application entitled "Card Wallet" from which the '721 Patent would issue. Erik Moon assigned the '721 Patent to DM.

1   DM is the owner of all right and title to the '721 Patent.

2       14.    DM is a company engaged in the manufacture and sale of innovative wallet and card

3   holder products, including products which practice the '721 Patent. DM markets and sells its high-

4   quality card wallet products under the brand name DECADENT MINIMALIST, registered with the

5   United States Patent and Trademark Office ("USPTO") under U.S. Reg. No. 4,977,412, and a "DM"

6   logo mark, registered with the USPTO under U.S. Reg. No. 4,977,413. True and correct copies of

7   DM's trademark registrations are attached hereto as Exhibit B.

8       15.    DM markets and sells its distinctive and well-known card wallet products nationwide,

9   including on its website <www.decadentminimalist.com> and through retailers including

10  <www.amazon.com>. True and correct copies of product listing pages for DM's DECADENT

11  MINIMALIST branded products are attached hereto as Exhibit C. DM's products have met with

12  significant market success as DM's card wallets quickly developed from a crowdfunded limited

13  release to a full, branded product line in the matter of months.

14      16.    In addition to its patent, DM further owns distinctive and nonfunctional trade dress in

15  the overall aesthetic design of its DECADENT MINIMALIST card wallet product. The elements

16  which combine to form the visual whole of DM's protected trade dress are as follows:

17          a.     The distinctive pear shape (or irregular oval) cut-out designs located at

18  opposing corners of DM's card holder device where the upper and lower arms respectively meet the

19  base. DM filed an application with the USPTO to register this trade dress design on June 8, 2017

20  under U.S. App. Serial No. 87/481,484. A true and correct copy of U.S. App. Serial No. 87/481,484

21  is attached hereto as Exhibit D. DM's trade dress design filed with the USPTO is depicted as follows,

22  with the cut-outs shown in solid lines:



INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

*Decadent Minimalist, Inc. v. Curv Group, LLC*
COMPLAINT

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

b.      The distinctive scalloped corners located at opposing corners of DM's card holder device where the upper and lower arms meet the base.

c.      Distinctive rounded cut-out designs appearing at opposing tips of the upper and lower arms of DM's card holder device.

d.      True and correct copies of product listing pages for DM's DECADENT MINIMALIST depicting DM's above-described trade dress on DM's actual products are attached hereto as Exhibit C. The above-described trade dress shall be referred to herein as the "DM Trade Dress," and is shown as follows:



17.      DM has used the DM Trade Dress in commerce continuously since at least as early as September 1, 2014 by the sale of its card wallet products featuring the DM Trade Dress throughout the United States, thereby establishing priority rights in the trade dress dating to at least September 1, 2014. Through its extensive use of and application for the DM Trade Dress, DM is the owner of the said trade dress in connection with wallets, card holders, and related products. Further, through DM's extensive and continuous offer, sale, provision, promotion, and/or advertisement of its card wallet products under the trade dress since September 1, 2014, and otherwise through the use in commerce and in this state of the trade dress in connection with DM's products starting on such date and continuing through the present, DM has established considerable goodwill in the trade dress, and the trade dress has become and is readily associated in the minds of consumers with DM and its unique card wallet products. As described further below, Defendant has simply copied DM's protected trade dress design by selling a card wallet product featuring virtually identical design features, thereby

demonstrating the secondary meaning, distinctiveness, and recognition the DM Trade Dress has acquired in the minds of consumers and others in the industry. Thus, on information and belief, a significant portion of consumers and persons within the relevant industry associate and understand the DM Trade Dress as an indicator of source of DM's popular card wallet products.

18.     Further, DM's trade dress is not functional. The elements which comprise the DM Trade Dress consist strictly of the aesthetic design of the card wallet product, and do not contribute to or improve the functionality of the product or affect the cost or quality of the product. There are numerous alternate ways to design a similar card holder product, beyond the ornamental arrangement protected by DM's trade dress. That is, any elements besides DM's distinctive irregular oval shapes, cut-outs, and scalloped corners could alternatively be used as visual, ornamental design features for competing products, and on information and belief, there is no particular association of DM's distinctive shapes or features with card wallet products. Such shapes or features could additionally be placed anywhere else on a competing product besides the identical locations on which DM features its ornamental trade dress.

19.     DM's claim of trade dress in the ornamental design of its card wallet products would not put others at a non-reputation-related disadvantage. DM does not attempt to stop Defendant or any other competitor from creating a competing card holder product by virtue of asserting proprietary and exclusive rights in DM's trade dress. It is simply that Defendant and other third parties cannot copy DM's distinctive ornamental designs and their arrangements so as to cause confusion amongst consumers. The DM Trade Dress lacks a utilitarian advantage. The usefulness of DM's products is not enhanced by, *inter alia*, the use of DM's certain shapes and their placement on the product. DM created the DM Trade Dress based upon graphical design and aesthetic choices and considerations, not because the trade dress was the simplest or cheapest way of designing or manufacturing the product. In fact, the DM Trade Dress is the result of a complex series of industrial and aesthetic design choices and processes. DM has not advertised the utilitarian advantage of its trade dress. DM has made no statements regarding the trade dress elements contributing to any utilitarian advantage. DM's claimed trade dress is the look and adornment of the product design – the DM Trade Dress simply has no functional purpose.

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

**Defendant's Infringing Activities**

20.     Curv is a late-coming competitor to DM in the card wallet industry. On information and belief, Curv has been selling card wallet products under its brand BOGUI only since around 2016. On information and belief, Curv offers a highly similar, or in fact identical line of wallet and card holder products as offered by DM, also similarly available through sources including <www.amazon.com>.

21.     Recently, DM has become aware that Curv has, without authorization and in contravention of DM's rights, sold a card wallet product which infringes, either literally or by equivalents, Claim 1 and additional Claims of the '721 Patent, and further is confusingly similar, and in fact nearly identical, to DM's trade dress. True and correct copies of product listing pages for Curv's infringing card wallet products, marketed under the brand BOGUI CLIK, are attached hereto as Exhibit E.

22.     Curv's infringing card wallet product, and design thereof, is likely to cause confusion with the DM Trade Dress. Curv's BOGUI CLIK product features identical irregular oval design cut-outs and scalloped corners at opposing corners of the product where the upper and lower arms respectively meet the base, as well as rounded cut-out designs at the tips of the arms. The design elements and their placement are effectively identical in Curv's product as compared to the DM Trade Dress. On information and belief, the parties' products offered under the respective designs are also effectively identical – card wallet products, sold through the same channels and to effectively the same customers. Side-by-side comparisons of Plaintiff's product featuring the DM Trade Dress and Defendant's product featuring the infringing design are shown as follows:

//
//
//
//
//
//
//

*Decadent Minimalist, Inc. v. Curv Group, LLC*
COMPLAINT                                    7

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

| DM Product / Trade Dress | Infringing Product / Trade Dress |
|---|---|
|  |  |

23.     On information and belief, Defendant has marketed, promoted, offered, provided, and made significant sales of products, namely, card wallet products which practice the '721 Patent and use DM's Trade Dress, to consumers located within the State of California and within this District. Specifically, Plaintiff purchased Curv's infringing BOGUI CLIK product on <www.amazon.com> from California and this District on July 11, 2017, and received shipment of such infringing product in California and this District. On information and belief, Defendant markets, offers, and sells the infringing BOGUI CLIK to a significant number of consumers located in the State of California and this District, and Defendant interacts and does business with such consumers, through websites and retail sites controlled by Defendant, including without limitation <www.curvgroup.com/bogui>, <https://www.getkeysmart.com>, and <www.boguicarry.myshopify.com>. Defendant has thus conducted significant commercial activities and obtained significant revenues and profits in and from the State of California and this District derived specifically from the unlawful actions giving rise to this suit.

24.     On information and belief, Defendant has adopted, used, and infringed the DM Trade Dress and '721 Patent with actual knowledge of DM's said trade dress and patent on account of the facts, among others, that the parties are competitors and that Defendant's infringing product virtually copies DM's trade dress and the limitations of the '721 Patent. On information and belief, Defendant thus intended and intends to trade upon and usurp the considerable goodwill DM has established in

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

its intellectual property. Defendant, on information and belief, having seen DM's product on the market and its phenomenal success, created its card wallet product and adopted trade dress with the intent to replicate the device disclosed in the '721 Patent and the DM Trade Dress in order to trade upon DM's significant goodwill and commercial success and thus willfully infringe the DM Trade Dress and '721 Patent.

25.     As a result of Defendant's unlawful actions alleged hereinabove, DM has suffered damage in the form of, *inter alia*, lost revenues and profits in an amount exceeding $75,000 and to be proven at trial, and lost customers and market share. DM has seen a significant decline in its sales since Defendant entered the market with its infringing product. DM has further suffered harm for which it has no adequate remedy at law to the goodwill, reputation, and distinctiveness it has built up through considerable expense of time and money in its valuable trade dress. Defendant meanwhile is directly infringing DM's patent and unfairly trading on the goodwill of DM in its trade dress, thereby reaping unlawful and unjust revenue, income, profits, and goodwill. DM accordingly seeks injunctive and monetary relief by this action to put an end to Defendant's infringing activities and rampant unjust enrichment, and remedy its significant harm caused by Defendant's illicit actions.

## CLAIM I

## DIRECT INFRINGEMENT OF THE '721 PATENT

26.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 25 of this Complaint as though fully set forth herein.

27.     On information and belief, Defendant has been and is now infringing, literally or by equivalents, Claim 1 of the '721 Patent in the State of California, in this District, and elsewhere in the United States in violation of 35 U.S.C. § 271(a) by, among other things, making, using, selling, or offering for sale card wallet products, including without limitation, at least the BOGUI CLIK card wallet product (the "Accused Device"), which includes:

a base comprising lower and upper end portions;

a lower arm comprising an inner end portion engaged with said lower end portion of said base and an outer end portion; said lower arm further comprises a channel portion and a protrusion disposed at said outer end portion blocking entry to said channel portion, the protrusion extending inward toward a longitudinal axis of the card wallet; said channel portion of the lower arm having a level channel floor between the inner end portion and the outer end

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

portion, configured to receive an entire length of the lower edge portion of the card;

an upper arm comprising an inner end portion engaged with said upper end portion of said base and an outer end portion; said upper arm comprising a channel portion and a protrusion disposed at said outer end portion of said upper arm blocking entry to said channel portion of said upper arm, the protrusion of the upper arm extending inward toward the longitudinal axis; said channel portion of the upper arm having a level channel floor between the inner end portion and the outer end portion, configured to receive an entire length of the upper edge portion of the card;

the upper and lower arms engaged to the base only at the inner end portions of the upper and lower arms, providing an opening through the card wallet of unobstructed display of the card from both an outermost exterior front surface and an outermost exterior rear surface of the card wallet, said outermost exterior front surface is axially symmetrical to said outermost exterior rear surface about the longitudinal axis;

the lower arm comprises only one gusset disposed at the outermost exterior rear surface and the upper arm comprises only one gusset disposed at the outermost exterior front surface; and

said base and said channel portions of said lower and upper arms form a retention area to retain the card, said base having a level inner surface configured to rest flush against a parallel width side of the card retained in said retention area;

said protrusions of said lower and upper arms are moveable as the lower and upper arms flex between a non-biased position where said retention area is closed and a biased position where said retention area is open; said protrusions of said lower and upper arms are moved to said biased position upon insertion of the lower and upper edge portions of the card at said protrusions of said lower and upper arms allowing complete insertion of the card within said channel portions of said lower and upper arms, and then return of said protrusions of said lower and upper arms to said non-biased position where the card is retained within said retention area.

as covered by Claim 1 of the '721 Patent, to the injury of the Plaintiff. Defendant is directly infringing the '721 Patent pursuant to 35 U.S.C. § 271(a).

     28.    On information and belief, Defendant has been and is now infringing, literally or by equivalents, Claims 2, 3, 4, 5, 6, 7, 10, 11, and 12 of the '721 Patent in the State of California, in this District, and elsewhere in the United States in violation of 35 U.S.C. § 271(a) by, among other things, making, using, selling, or offering for sale card wallet products, including without limitation, at least the Accused Device, which includes:

2. The card wallet of claim 1, wherein said channel portion of said upper arm is spaced from and substantially aligned with said channel portion of said lower arm.

3. The card wallet of claim 1, wherein said lower arm is substantially perpendicular to said base.

4. The card wallet of claim 1, wherein said upper arm is substantially perpendicular to said base.

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

5. The card wallet of claim 1, wherein said protrusion of said lower arm is spaced a distance D1 from said protrusion of said upper arm in said non-biased position; said distance D1 is smaller than the width W1 of the card.

6. The card wallet of claim 1, wherein each of said protrusions of said lower and upper arms are rounded.

7. The card wallet of claim 1, wherein the entire card wallet is made from a one piece material.

…

10. The card wallet of claim 1, wherein the protrusion of the upper arm flexes as an integral unit with the upper arm and the protrusion of the lower arm flexes as an integral unit with the lower arm.

11. The card wallet of claim 1, wherein the gusset of the lower arm comprises an aperture having round features.

12. The card wallet of claim 1, wherein the gusset of the upper arm comprises an aperture having round features.

as covered by Claims 2, 3, 4, 5, 6, 7, 10, 11, and 12 of the '721 Patent, to the injury of the Plaintiff. Defendant is directly infringing the '721 Patent pursuant to 35 U.S.C. § 271(a).

29.     Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendant as alleged herein. Thus, Defendant is liable to Plaintiff in an amount that adequately compensates Plaintiff for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

30.     Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

31.     Defendant's acts of infringement have caused and will continue to cause Plaintiff irreparable harm for which there is no adequate remedy at law. Unless enjoined, Defendant will continue the infringing conduct and continue to cause irreparable injury to Plaintiff.

## CLAIM II

## INDIRECT INFRINGEMENT OF THE '721 PATENT

32.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 31 of this Complaint as though fully set forth herein.

33.     On information and belief, Defendant has also induced others to infringe the '721 Patent in violation of 35 U.S.C. § 271. On information and belief, Defendant has induced

infringement by their distributors, retailers, and manufacturers who are selling, using, importing, exporting, providing, supplying, distributing, and/or offering the infringing BOGUI CLIK product, which directly infringes the '721 Patent, as alleged hereinabove. On information and belief, Defendant has encouraged the infringing conduct of their distributors, retailers, and manufacturers with knowledge and in disregard of the '721 Patent, and with intent that the intellectual property rights of Plaintiff be infringed.

34.     The inducement to infringement by Defendant has been and is intentional, deliberate, and willful.

35.     As a result of Defendant's infringing activities, Plaintiff has sustained, and continues to sustain, damages in an amount to be proven at trial. Plaintiff is further entitled to collect pre-filing damages for the full period allowed by law.

36.     Defendant's acts of inducement to infringement have caused and will continue to cause Plaintiff irreparable harm for which there is no adequate remedy at law. Unless enjoined, Defendant will continue its infringement and cause further irreparable injury to Plaintiff.

## CLAIM III

## TRADE DRESS INFRINGEMENT

37.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 36 of this Complaint as though fully set forth herein.

38.     Plaintiff has established significant goodwill, favorable public recognition, and acquired distinctiveness in its nonfunctional DM Trade Dress, in California and nationwide, through extensive use and promotion of the trade dress throughout California and in commerce in connection with its card wallet products.

39.     Without DM's consent or authorization, Defendant has used, in connection with the sale, offering for sale, provision, distribution, or advertising of their goods or services, trade dress that is likely to cause confusion with the distinctive, nonfunctional, valid DM Trade Dress owned by Plaintiff and in which Plaintiff has senior and priority rights over Defendant, and/or mistake or deception in the minds of consumers as to affiliation, relation, or association of Plaintiff with Defendant or as to the origin, sponsorship, or approval by Plaintiff of Defendant's goods or services.

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

Defendants have thus infringed Plaintiff's trade dress.

40.    These acts of trade dress infringement have been committed with actual and constructive knowledge of Plaintiff's prior DM Trade Dress, and with the intent to cause confusion, mistake, or deception. Defendant's acts therefore violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and related state law.

41.    As a direct and proximate result of Defendant's infringing activities, Plaintiff has suffered and will continue to suffer significant damage in the form of loss of revenue, income, profits, and goodwill, which will increase if not enjoined, and Defendant has unfairly acquired and will continue to unfairly acquire revenue, income, profits, and goodwill at Plaintiff's expense.

42.    Defendant's trade dress infringement will also continue to cause irreparable harm if Defendant is not restrained by this Court from further violation of Plaintiff's rights. Plaintiff has no adequate remedy at law for all of the harm being caused to Plaintiff, particularly in respect of the loss of Plaintiff's goodwill and market share due to Defendant's infringement. Plaintiff is therefore entitled to and seeks temporary and permanent injunctive relief.

43.    Defendant's infringement of the DM Trade Dress as alleged hereinabove is an exceptional case and was willful and intentional, entitling Plaintiff to enhance its actual damages and to an award of attorneys' fees.

## CLAIM IV
## UNFAIR COMPETITION

44.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 43 of this Complaint as though fully set forth herein.

45.    Defendant's acts of infringement and other unlawful actions alleged hereinabove constitute "unlawful, unfair or fraudulent business act[s] or practice[s] and[/or] unfair, deceptive, untrue or misleading advertising" within the meaning of Cal. Bus. & Prof. Code § 17200.

46.    As a direct and proximate result of Defendant's unfair business practices, Plaintiff has suffered and will continue to suffer significant damage in the form of loss of revenue, income, profits, and goodwill, which will increase if not enjoined, and Defendant has unfairly acquired and will continue to unfairly acquire revenue, income, profits, and goodwill and unjustly enrich itself at

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

1  Plaintiff's expense.

2  47.   Defendant's unlawful actions will also continue to cause irreparable harm if Defendant

3  is not restrained by this Court from further violation of Plaintiff's rights. Plaintiff has no adequate

4  remedy at law for all of the harm being caused to Plaintiff, particularly in respect of the loss of

5  Plaintiff's goodwill and market share, and loss of sales. Plaintiff is therefore entitled to injunctive

6  relief.

7  48.   As a consequence of Defendant's actions, Plaintiff is also entitled to an order that

8  Defendant disgorge all profits obtained from the promotion, offer, display, provision, use, or sale of

9  the infringing product, and to exemplary damages sufficient to punish and make an example of

10  Defendant.

11  **PRAYER FOR RELIEF**

12  WHEREFORE, Plaintiff prays for relief as follows:

13  49.   For an order and judgment in favor of Plaintiff that Defendant has infringed the '721

14  Patent, that Defendant has infringed Plaintiff's DM Trade Dress in violation of Plaintiff's rights

15  under federal law, common law, and/or California law, and that Defendant has unfairly competed

16  with Plaintiff in violation of Plaintiff's rights under federal law, common law, and/or California law;

17  50.   For a judgment and order requiring that Defendant pay to Plaintiff its damages, costs,

18  expenses, and pre-judgment and post-judgment interest for Defendant's infringement of the '721

19  Patent as provided under 35 U.S.C. § 284, and an accounting of ongoing post-judgment infringement;

20  51.   For an injunction preliminarily and permanently enjoining Defendant, and its officers,

21  directors, agents, servants, employees, attorneys, subsidiaries, affiliates, and all those acting in

22  concert with or under or through it, from making, selling, offering for sale, using, and/or exporting or

23  importing any devices that infringe the '721 Patent or DM Trade Dress, and otherwise from directly

24  or indirectly committing or inducing or contributing to further acts of infringement of the '721 Patent

25  or DM Trade Dress;

26  52.   For an order and judgment that Defendant be required to immediately deliver to

27  Plaintiff's counsel its entire inventory of infringing products, including without limitation all BOGUI

28  CLIK products, that are in Defendants' possession, custody, or control.

53.     For an order and judgment that Plaintiff recover from Defendant its damages and lost profits in an amount to be proven at trial.

54.     For an order and judgment requiring an accounting of Defendant's profits, revenues, funds, and assets that have arisen and arise out of its infringing or unlawful activities.

55.     For an order and judgment that Plaintiff be awarded the greater of (1) three times Defendant's profits, or (2) three times any damages sustained by Plaintiff, under 15 U.S.C. § 1117, plus prejudgment interest.

56.     For an order and judgment finding that this case is an exceptional one and that Plaintiff be awarded its fees, costs, expenses, and disbursements incurred in relation to this action, including its reasonable attorneys' fees and investigative expenses.

57.     For an order and judgment sustaining each of the causes of actions set forth herein against Defendant;

58.     For an order and judgment requiring Defendant to pay such other damages and monetary relief as the Court deems fit under the circumstances, or as may be sought by Plaintiff according to proof at trial; and

59.     For any and all other relief as the Court deems just and reasonable.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues raised by the Complaint.

Respectfully submitted,

Dated: September 20, 2017          By: */s/ Otto O. Lee*
                                                              Otto O. Lee, Esq.
                                                              Kevin Viau, Esq.
                                                              INTELLECTUAL PROPERTY LAW GROUP LLP
                                                              12 South First Street, 12th Floor
                                                              San Jose, California 95113
                                                              Telephone: (408) 286-8933
                                                              Facsimile: (408) 286-8932

                                                              *Attorneys for Plaintiff*

*Decadent Minimalist, Inc. v. Curv Group, LLC*
COMPLAINT                                    15

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113